We're on to the first case of the morning called 210-45, Thomas J. Ballardo v. Barrington Community School District 220. On behalf of the F1, Mr. Mark Mone, on behalf of the F1, Ms. Rosa Dumoulin. Mr. Mone? Yes, thank you. May it please the Court, good morning. Good morning. Counsel. This case essentially is about safety equipment. That's the essence of the case. And we're dealing with an L screen, which is a protective screen used to protect someone pitching to a batter. I think you might have all seen it. There's pictures in the record. But essentially, if I'm pitching to you, it's like an L, and there's netting around it. And its sole purpose is protection. It's safety equipment. So I want to address, first of all, the negligence count that was dismissed. When you're dealing with safety equipment... Counsel, before you go on to talk about negligence, your opponent argues that you've waived arguing this issue on appeal because you did not replete it at the lower court. Yeah, I'd be happy to address that. They cite a case called Foxcraft. And in that case, the plaintiff chose, when certain counts were dismissed without prejudice, chose in the second amended pleading to not assert certain claims. That was a choice the plaintiff made, not to reassert those for whatever reason. Our case is different. Our count was dismissed with prejudice. We had no opportunity or choice to replete it. It wasn't available to us. In the Foxcraft case, the court cited that if the plaintiff didn't replete it, there's some confusion at trial, whether he's still going to make those claims or not, even though they weren't dismissed with prejudice. So in our case, there's no surprise. If we proceeded to trial, it would have been only on the Wilfred Watton claim. That was the only claim available to us. For every case that has addressed this issue, though, as a dismissal with prejudice, Petrowski, Kieveman, and most importantly, Kincaid, go the other way. I haven't seen a case that adopts your position. Well, I don't know what they would suggest for us to do. There's a dismissal with prejudice. It's not a final and appealable order. There's no 304A language in that order. They suggest you don't abandon the claim. They suggest there's a number of different things you can do. In the Child's case, it gives you three things to do in this situation, and one of those things is simply to put a footnote into your new complaint saying, here, we're still preserving our issues with respect to the negligence claim. Well, it seems that when you have a dismissal with prejudice as opposed to a choice of a plaintiff to abandon it or not, we didn't abandon that claim that essentially was dismissed by the trial court. And with prejudice, I think it is distinguishable from some of those cases based on that. So, you know, certainly in the motion to reconsideration, it was brought up. There was no argument at that time that it was abandoned or withdrawn in the trial court. When we filed a motion for reconsideration years later and included the negligence dismissal as part of that motion for reconsideration, there was nothing said at that time or mentioned that it was abandoned or untimely and that it was fully briefed and ruled upon by the trial court. So if negligence is not forfeited or waived, how do you divide 3102A language with respect to the negligence count? Well, how do I get around 3-106? Right. The condition of property, recreational type of facility. I think in this case we're dealing with a protective screen similar to like a guarantee, a football helmet, piece of safety equipment, which is not a condition of the property. The condition of the property, if you read all those cases, they're dealing with like a rut on the football field, a playground, the ground is a rut, someone trips in a sidewalk where they play hopscotch, those type of conditions of the property. This is an L screen that is movable, placed there by defendant, managed, maintained, owned, operated by defendant. It's not a condition of the property itself. So I think it's distinguishable from those 3-106 cases. It's not something like a helmet, though, because you can't wear this L screen. It has to go somewhere, and it becomes part of that location for purposes of use. So why isn't it a condition? Well, I think... Well, let me ask this. Does the condition have to be attached? Is that your premise, or it has to be inherent? I think it has to be inherent with the property itself, something to do with the condition of the property. I think this takes it outside it being a piece of safety equipment. And I think under Garrity, the Supreme Court carved out an exception and talked about safety equipment, which essentially this is, a football. What about a baseball screen? You sit behind the big, big old screen that keeps the spectators from getting hit with foul balls in every field that you're overseeing. Right. And you would consider that big screen to be safety equipment and not a condition of property? I would, and I think that if there was a hole in that screen and a patron of the game was injured because a ball went through a hole in that screen, that that would be a negligent standard as opposed to a willful and wanton standard. Because it's safety equipment? Right. So there's just a total safety equipment thing carved out by Garrity, is what you're saying? I believe so. I believe so. Now, Garrity is a school code case. I mean, Garrity talked about the immunity provisions of the school code and indicated that there was a common law duty to provide the safety equipment. I mean, how do you square that with the Total Immunity Act? Because it seems like we're talking about apples and oranges when we're talking about Garrity versus this case. Well, I think when you look at the reasoning in Garrity, they talk about public policy considerations when you're dealing with safety equipment as opposed to other type of equipment. They also talk about, in Garrity, how it wouldn't be unduly burdensome to make sure that when you provide the equipment, this isn't a failure to provide case, but when you do provide safety equipment, you should make sure it's proper, it's not defective, it's in good working order. So I would suggest that the reasoning in Garrity would carry over and would carry the day as far as allowing a negligence count to stand in a case like this. If this was on a park district as opposed to a school, if a park district had this L screen and the same situation happened, the school code wouldn't be involved at all. Sure. So then Garrity wouldn't apply, so then we'd just go under the Total Immunity Act? No, I don't think 3-106 would apply either under that situation because it being a unique piece of safety equipment, not a condition of the property itself, not a rut in the ground, something like that, something that was placed, movable, I think that would also fall outside of any immunity. It would be a general negligence standard as to the park district also. So that's my position on the negligence. I'll move on to the Wolf of Wanton at this time. Essentially, the motion for summary judgment was granted on the Wolf of Wanton count. There are genuine issues of material fact, and the key fact is really involving notice of the whole. And defense seems to contend that actual knowledge of the whole before the incident is required, and then they also say and agree that constructive notice is part of Wolf of Wanton. Courts have found that you don't have to show actual knowledge, that a defendant, you show recklessness by a defendant failing to discover the danger through recklessness or carelessness when it could have been discovered by exercise of ordinary care. Well, what is the danger here? The danger is significant. The very purpose of a screen is when someone pitches it, and the screen is usually placed closer to the batter and the ball can be lobbed in, and when it's hit back, the screen is literally protecting the person behind the screen. That's its only purpose, and that's essentially why it's there. The danger is if there's a hole in that screen, a ball can go through it and injure the person who's supposed to be protected by it. Okay. Did anyone, even to today, find a hole in that screen? Oh, yes. After the incident, the son, who hit the ball, unfortunately, felt terrible about hitting his dad, looked at the screen, he saw a hole right where his dad's head was, and afterwards, also the head coach of the defendant's employee inspected the screen, and in a statement said he saw a hole. But, Mr. René, prior to the dad and the son beginning to work with his son's pitching, apparently, in the screen, prior to that, wasn't there deposition testimony by two coaches who had just worked in that area and did not see a hole? And the son, actually, in a deposition said prior to beginning he did not see a hole. Well, and I think they actually, with the coaches, they actually used the screen moments before. Right. And I think that's actually to our benefit in establishing notice because... But they didn't see a hole. But it should have been discovered. But the son didn't see a hole either. Well, he didn't look at it and inspect it. It wasn't his job to inspect it. The son didn't notice a hole, but, again, he didn't look at the screen for purposes of inspecting to see whether there was a hole. I mean, there might be comparative negligence here on the father or the son. You know, certainly that's a question of fact for the jury to determine eventually. But the persons whose job it was to ensure the safety of the screen, who admitted that they were responsible for inspecting the screen, they looked at it moments before. And the recklessness is that they did discover the hole. That is the recklessness given the foreseeable danger that can arise. And they admit, and the coach admits, that if you had seen a hole and you didn't have to take it out immediately, that it would be dangerous to have it in there in the vatting cave with a hole in it. So the recklessness is failing to discover that hole. So your position is that the genuine issue of material fact is whether or not there was indeed a hole there. So it's for the jurors to decide whether the two coaches are telling the truth or the two coaches said they didn't see a hole or the dad. It's a classic issue of material fact. You cited Kerwin, the Kerwin case? Yes. Isn't this a little different than the Kerwin case with respect to the trial court being reversed in Kerwin who found that there was no issue of material fact? When in that case there was a question and there were standards that were set out in that case as well. I mean, how do you try to tell us here today that the fact that the trial court was reversed in Kerwin, we should reverse the trial court here? Well, the language in Kerwin I think is very instrumental. It talks about how willful and wanton conduct is ordinarily a question of fact for the jury. Just because standards were not breached, I think certainly you can have issues such as this where a coach who's in charge of the screen is looking at it. Fails to discover the hole. It's undisputed really that there was a hole afterwards. I guess the only defense would be the reason he didn't see the hole was perhaps they can speculate and say, well, the ball created the hole at the time it was hit. But there's evidence that from the father and the son that the velocity of the ball didn't slow down one bit as if it would have broken through the net. It didn't veer off one way or another. The doctors have said that the velocity was of high impact. All the evidence is, and should be construed in the nonmoving's favor, especially in a motion for summary judgment, is that the hole was there. And the ball went through it and struck the dad. So I think when you consider all of that, there are genuine issues of material fact that ultimately a jury could decide. And certainly we would live with that decision. I thought that one coach said there was a hole just on one side. I thought it was like a two sided screen or something. You're correct in saying that. The coach, and it was interesting, I think this again goes to credibility. He issued a statement, which is part of the record, and we got the statement in discovery. In the statement he says there's a hole in the screen, just a hole in the screen. In his discovery deposition, he says that, oh, no, just one side of the screen was cut. And the other side still had, because it overlapped the bar, the other side was still attacked. So it was an inconsistent, contradictory statement, which I would certainly use at trial to try to impeach him with his statement that there was a hole. And then he was kind of changing that testimony. So you're correct in pointing that out that he did testify to that in his deposition, but I think it's impeachable. So those are our main arguments regarding the genuine issues of material fact that ultimately a jury should decide this issue. And let us proceed on whether the whole notice issue and the whole issue for a jury to decide. If they had used that just before, and the team in the summer league and everybody was agreeing that they had, and number one, the coach said he had, in his 11-year employment, had never seen a ball go through, and number two, he had just used it after it had been inspected before they used it, are you saying it was reckless for him not to inspect it after the use as well as before the use? Or does he have to put a note up on it that says this is now safe for use? I mean, what's the failure here? Well, the failure is that the coach admits that upon inspection, if he had seen a hole, he would have taken the L screen and removed it from this banded cage area, so no one would have had an opportunity to even stand behind it. That was the procedure. That was the protocol. So it's our contention that the hole was there, he had looked at it moments before, and by his recklessness, he simply didn't see it, and he didn't do a proper inspection. I think what Justice Hutchinson is asking is, is it a duty then that you're putting them down in the school district to inspect both before they use it for their safety and after they use it for someone else's safety who may stumble in there later? Well, he's in the cage with the players the entire time, the screen is being used, it's constantly under his watch. If a ball had gone through it, he would have been aware of it and certainly then had a duty to remove it. So he's there inspecting this screen the entire time it's in use with his players, he's pitching to his players, he's using it. So under that circumstance, sure, he certainly had a continuing duty to inspect the screen before, during, after it was done, if there was any hole in it, to remove it from the bagging cage. You'll have some time for rebuttal. Thank you so much. Counsel, I am not going to try. Can you say your name for me when you get to the microphone? May it please the Court, Counsel? My name is Rosa Tumialan for the defense. Your Honor, first I'd like to start with the issue regarding the waiver. This case, the count one, with respect to ordinary negligence, is waived. Counsel just stated that this case is different because it was a dismissal with prejudice and leave to replead the willful one count, and that somehow that takes it outside of the Foxcraft rule, in which the Supreme Court said that there are three ways to avoid the consequences of abandoning a claim. When you file an amended complaint, anything that was previous to that, that's not incorporated into that complaint, is abandoned. That's the rule. It's a well-established rule. To avoid that, you either stand on your complaint and appeal it right then, or amend your complaint and incorporate with a note that those dismissed counts are preserved for review, or you somehow seek interlocutory appeal and proceed. Now, in this case, it was a dismissal with prejudice. 304A language could have been requested and issued, and an appeal could have been preserved. Or the most expeditious manner would have been for the amended complaint to incorporate, or reallege, the willful one, or excuse me, the ordinary negligence claim in count one. But he couldn't reallege it in the complaint because he was barred by being dismissed with prejudice, correct? Correct, but what he could do is he could have put the count in the complaint with expressing a disclaimer that this is only replet for purposes of preservation of the record on appeal. And that would have been sufficient to allow this court to review it. But having filed an amended complaint and having abandoned the ordinary negligence count, this court need not review and cannot review because that was not preserved. However, even if the court were to review it. But when you say we cannot review it, I mean, that's not jurisdictional. Forfeiture is a problem for the parties, not for the court. We still have jurisdiction to review it, don't we? You have jurisdiction, however, it was not preserved for review. So if the court were inclined to reach the issue, there is still no error in dismissing it because this case is governed by 3-106 and McEwen controls this case, not Garrity. McEwen explains exactly what 3-106 was intended to do and what is a condition of the land. McEwen, in that case, you had a hay rack and the plaintiff was injured when the hay rack ran off, when the mules were started. And the court in that case said that 3-106 did not apply in that case because the condition of the land was the hay rack. But there was nothing wrong with that hay rack. There was no allegation that the hay rack was dangerous, defective, or negligently maintained. So because of that and the land was otherwise safe, but it was used in a safe manner, that's different. That's not a 3-106 case. But when you take McEwen and apply it to our facts, you have a defectively maintained L screen on the land, which is used for recreational purposes. That is exactly what 3-106 was intended to apply. So the immunity would apply and there would be no liability in the absence of lawful warrant. Well, in this case, though, was the property misused? Are you submitting the property was misused in the case before us? No, the property was used for its intended recreational purposes. However, the condition of the land was the L screen. That was because the Sylvester case, which was the case relating to the pathways or sidewalks leading into Soldier Field, the court there found that that car block was itself its equipment. It's not recreational equipment, but equipment nonetheless, and that was a condition of the land. You take that and apply it to our facts, and that teaches that the L screen itself was a condition. It was equipment. Granted, it's safety equipment, it's some kind of recreational equipment, but it's a condition of the land. And under McEwen and Sylvester and all those cases that construe 3-106, that would require that the immunity be applied and the trial court properly found that 3-106 controls this case and the immunity applied. So it's not – I'd ask counsel if the condition has to be inherent or attached, and you would say neither of those. It needs to be a piece of equipment used on land for recreational purposes, essentially. It has – well, it has to be a piece of equipment on the land. The land itself needs to be a recreational thing. The equipment itself, it does not – it's not required to be recreational equipment of any sort. The Sylvester case teaches that much because of the car block, and that counted as a condition on land used for recreational purposes. So as long as it's equipment – and for instance, there's another case, I believe it's Annan, the restroom sink in the bathroom in the park, that consists of a condition of land used for recreational purposes. It's really the character of the land and the purpose for which that land is intended to be used, not so much the actual equipment or even the activity. So if we put the L frame out in front of the courthouse here where we used to have a fountain, it probably wouldn't be – it wouldn't fall under. No, it would not. There's a case – the name is escaping me right now, but there was something about a condition on courthouse land or something being done on courthouse property, and that did not count. But we're not usually considered recreational. No. As fun as this is, Your Honor, no, it's not. The – so it's clear, really, that Garrity has no application here. It's an apposite. And the McEwen case and Sylvester case and the cases following 3-106 and applying it in the context in which we have here, it's clear. And the trial court made no error in that regard. With respect to the Wolfville-Wanton count, there was no error there by dismissing the complaint – or excuse me, granting some re-judgment on count two of the complaint. And I think it's important for the court to realize that this is the – the trial court denied the motion to dismiss count two, specifically finding that there were enough facts to sustain the complaint, to withstand the motion to dismiss. That's important because the court expressly said that I – you've alleged enough facts here that if proven, if you establish this notice, then I think you might be able to prove your claim. That's a completely different standard than we have at summary judgment. And there are several cases that plaintiff cites in his brief where he says, well, look, this should have gone to the jury. Look at Palmer. Look at Murray and Kerwin. However, of those two – of those three, only Palmer – or excuse me, I think it was only Murray was a summary judgment case. The other two were at the motion to dismiss stage. And you have – Wasn't Kerwin a summary judgment? Your Honor, that was a motion to dismiss. It was based on the ambulance response. Right. Yes, and that – the court withstood – that complaint withstood the motion to dismiss, and the court found that there were enough facts that if proven, an opportunity to prove those facts would allow that issue to go to the jury. But what we have here is the plaintiff was allowed to take discovery and took evidence and developed facts, however, developed no facts to establish either actual or constructive notice. Do you agree with the counsel's rendition of the record that there's absolutely no controversy that there's a hole in this thing after the injury? After the injury, there's testimony that there was – that people discovered a hole or saw a hole after the injury. There is no evidence, no dispute here that there was no – no one saw a hole before. And that's what is important here, because counsel is trying to suggest that there's an issue of fact about whether there's constructive notice. And that's what I take from the argument that was just presented here, that, well, because there's a general awareness that if a hole in the net that's designed to protect the person behind it from being injured by a fast ball, a baseball being hit back to them, that because it's generally aware, everyone knows that that's dangerous if there's a hole in that net. And because you have the coaches saying, of course, that that net would be removed, that somehow that general awareness makes it reckless and willful wanton conduct if somebody is actually injured when a ball goes through that net. Well, how do you respond to his argument that there is a genuine issue of material fact as to whether or not there – the way that the ball went through, there's no way that there could not have been a hole previous? And, you know, somebody can testify, I think the doctor said, with the way the trajectory of the ball came through the net. How is that not an issue of material fact? Okay. Counsel described – in kind of describing that scenario to Your Honor, he used the words classic issue of material fact. I would disagree that that's a classic issue of material fact. What this is is a classic issue of the legal effect of undisputed facts. We have no testimony at all from anyone that there was a hole in the net before. You have two coaches who have been at the district various years, long time, some 15 years I believe, one was 11 years, never saw a hole go through a District 220 net. That was the testimony. The plaintiff standing directly behind it, and he was hit at eye level, and he was standing behind or sitting behind that net, and he didn't see a hole before he was hit. The plaintiff's son never saw a hole before it was hit. And you had the coach testify that he had just used that net moments before, didn't see a hole. There was no hole there. There was no reason for District 220 to have had any kind of constructive notice. And I would add that there can be no actual notice here. This is really about whether or not there's constructive notice. And you cannot leave constructive notice out of a general awareness of a danger that you do not know specifically exists with your equipment or has ever existed with your equipment. Do they have a duty to check that equipment after they're done using it? And when they walk off the field to go to their game and then somebody else comes up and uses it? What's the duty, if any, of these two coaches? Well, the duty, if any, of these two coaches was to do what they were instructed by the district to do, inspect these in the spring before they're brought out and inspect them before each use. That is what they did. And because they do that, this kind of takes it into like that Palmer case where they're talking about, you know, how do you establish constructive notice? In Palmer, you have the fences that were knocked down, and they were down for three months. Constructive notice was found in that case because there was evidence that the park district did daily inspections. And so on those daily inspections, they would be deemed to know of these down fences. So when the plaintiff was injured, they could establish constructive notice. Again, that case was a motion-to-dismiss case, so the fact that that complaint was motion-to-dismiss really doesn't assist the summary judgment analysis, but what it does is it's instructive on what you need for constructive notice. Here you have testimony that nobody ever saw, no coach ever saw a ball go through a District 220 net, so they weren't even on notice that their nets were somehow susceptible to this issue or this danger. You have their testimony that they inspect them every spring before they're brought out because they've been in storage over the winter. They're inspected every time before they're used, and the coach testified that he did actually inspect it before using it with his team and warming them up before the game. There's no constructive notice. You cannot establish it on these facts. And so any testimony about, well, what did the velocity do, how could this be? Really, you don't get there because you can't get to what the credibility or who to believe about anything unless you actually have the constructive notice to create the issue of fact. And in the Palmer case, was there, I think they mentioned that it was reasonably foreseeable that a parent chasing a kid or playing with a kid could trip on this. Was there any duty or was it reasonably foreseeable that somebody may have been injured by this net on that day? No, because you have no testimony that there was ever a problem with any net. No coach ever saw a ball go through a net, a District 220 net. I mean, the issue really is what is the District 220 net, their susceptibility, and the District's constructive knowledge of any defects or dangers with their nets. They never saw any. We'd have a different situation if they had. No testimony was developed to that effect. And I think it's really important that the evidence here, if anyone was going to see a hole in that net before, it was going to be the plaintiff standing right behind the net. You don't see it, you don't have it. So the only facts we have here before the court are that there's no witness that saw a hole before the net, before the injury. Plaintiff didn't see the hole. The son didn't see the hole. No coach using the net saw a hole. The court, the trial court in granting summary judgment made note of these facts and expressed that, you know, opportunity was given to prove these facts and the constructive notice issue was what was to be developed. Plaintiff just didn't do it, and the court used those words. Unfortunately for plaintiff, those facts just didn't come out. They were not there. So summary judgment was proper, and the trial court did not err in granting it. Is there any dispute that I guess it would be Coach Wisniewski stayed for the batting practice of the summer team and was there the entire time and saw the balls that were hit and saw the net during that particular time? I mean, is there any issue that he walked away to go talk to somebody else and could have missed it? I think counsel said he was there throughout. He was at practice either pitching or watching, so was he there the whole time to see everything that happened? The evidence is consistent with that. He was there the entire time and he saw no problem with the net. And the testimony, his deposition, would have been different then if he had walked away. Then there would have been this maybe there's an issue, but there isn't one. We don't have anyone leaving the vicinity of the net. We don't have anyone seeing anything that showed that there was any kind of issue or defect with the net. This is an unfortunate incident, but what we have here is no facts developing constructive notice or establishing constructive notice. There is nothing to go to a jury. The only issue that would go to a jury is whether or not the acts that Mr. 220 undertook on constructive notice of a defect, whether those acts were willful one. We don't have any constructive notice, so we have nothing to submit to a jury. The trial court made that determination. That determination was proper, and that finding should be affirmed. Thank you. The last part dealing with constructive notice, it almost sounds like a closing argument before a jury. We're arguing facts here, facts that should be allowed to present to the jury. I think we all can agree that if the hole was present before the Velardos got in this cage, that there would be reckless misbehavior on the coach by not discovering it. That's the essence of this case. How are you going to prove that, Mr. Romain? Didn't you have the opportunity basically to present your facts through deposition? Yes. So how are you going to prove that this hole was there prior to when you deposed four people and none of them saw it? Well, very seldom I think they have a case where they admit they actually saw the hole, but in this case I think the evidence is he had every opportunity to see it. The evidence that the hole was there before is based on the nature of the incident and the testimony from the father and the son as far as the ball going straight through, as far as it not being veered off one way or another, and the velocity of the impact. I think their argument that in all their years the coaches never saw a ball break through the screen. These screens are designed so the ball doesn't break through. That's also evidence that the hole was there. Otherwise it would not have gone through. That's the purpose of the screen. So you're saying that's an issue for the jurors? Yes. Yes. And I think when you look at the facts, I think that's where we're arguing back and forth, and ultimately a jury could decide that. With the safety equipment in 3-106 in the cube, it talks about safety conduct, as opposed to condition of the property. Look at the case law. I couldn't find a single case that dealt with 3-106 as it applied to safety equipment itself. So I think that is an exception. And with the waiver argument, again, the language in that case talks about how it would be unfair to the defendant if the plaintiff proceeded to trial with different complaints out there and not knowing what they're going to proceed with. That's not an issue in this case. We didn't abandon that claim. Certainly the judge dismissed it with prejudice, and we proceeded forward. Well, maybe you didn't abandon it, but how did you preserve it for purposes of appeal? We preserved it by filing a timely motion to reconsider it, including that claim, having the judge determine that again, no objection raised at that time. It wasn't a final appealable order. It could have been. Right. But it wasn't. And I think it's intertwined with willful conduct. It's so intertwined that it wouldn't be a final appealable order. 304A language wasn't granted. And certainly I think because they're intertwined, I mean, if you look at the Kerwin case. Was 304A language requested? In the case, in that order? Yes. Did you request it here after the dismissal of the negligence count? I did not. Neither party. Because you said it was denied, and it confused me. I'm sorry. The motion was granted. But even in Kerwin, when the Supreme Court has described willful and wanton conduct as a hybrid between negligent and intentional acts, thus under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing. So I think they're intertwined, and that's why it wasn't. And they didn't argue it was a final and appealable order or a final order. What authority did you cite in your brief for the proposition that the defendant forfeited the right to argue this by not arguing it earlier on the motion you just said? No authority. I mean, did you find any authority for a forfeiture of forfeiture? Well, it was raised for the first time in response. In my reply brief, no, I did not find any authority that the motion be considered without arguing it that they forfeited that right on appeal. Any other questions that I'm happy to answer? No. Thank you. Thank you. All right. Thank you, counsel, for your argument. We will take this decision or this case under advisement, and we will make a decision in due course. Thank you.